Good morning, Your Honors, Madam Clerk, Stephen Mack on behalf of the appellant, Abby Rios. Your Honor, I think this particular case comes down to a threshold issue. The judge and the defendant never address that it's the jury's right to decide the issue on constructive notice. The Seventh Amendment right to the jury trial and the right of the jury to make the decisions of the facts in this case, but not only the facts, the law as well. Basically, as I understand it, your argument boils down to the idea that the answers to questions 1 and 2 are completely consistent because it is not true that 2 minutes and 12 sections means you're you can't be negligent as a matter of law. Correct. That's a factual question. Correct, Your Honor. That's the sort of beginning and end of it, isn't it? It is. And also the issue of whether or not this is a special verdict versus a general verdict, right, because the issue, the motion that was made after this Court, after the trial concluded, was a 50B motion. They never made a 50A motion prior to the jury being released. So you end up with a 50B motion, and the only way you can get to a 50B motion is to call this a special verdict. But in order for this to be a special verdict, the jury would have only, only been able to decide the facts, and the law would have been left for the judge. In this particular case, the law was decided by the jury. So entirely the question of negligence was posed to the jury, yes or no. Right. And this Court, and just about every other court, has been very clear in order to bring a 50B motion, you had to bring a 50A motion under a general verdict. So the question is, was this a special verdict or a general verdict? And the only way that the Court could have gotten to where it's at and gotten the decision it is, is to determine that this was a special verdict, because otherwise it fails on the threshold issue. Let's assume the contrary, just for purposes of discussion. Sure. And assume that Wal-Mart did make the necessary motion, so that this point can still be raised. Why don't you just explain, in terms of the record, what could establish that Wal-Mart was negligent, even though the yogurt-like substance was on the floor for only 2 minutes and 12 seconds. Just show . . . I think the test is, all you have to show is that reasonable jurors could have reached that conclusion. So say why. Okay. Sure. Factually, I think if you watched the video, you would see the Wal-Mart worker coming down the aisle. He testified that he always looks at the floor. If you look at the video, he's not looking at the floor. No, he's looking up at the shelves or it's hard to tell exactly. Correct. And then he testifies he looked down the next aisle.  down that aisle. And according to the testimony of the Wal-Mart supervisor and actually, I think, the Wal-Mart worker himself . . . Look, I don't know if you're getting my question. Obviously, the jury could think the guy is a liar. First of all, the DVD shows that he's not looking the way he says he was looking. And second, the judge said they could hold it against his credibility that he was a convicted felon. Right. But even assuming that his testimony can be discarded in its entirety or in part, whatever the jury thinks, just tell me what Wal-Mart . . . what the jury could conclude that Wal-Mart did that was a failure to exercise reasonable care. Sure. According to their . . . and I apologize. According to their own policies, he was supposed to sweep up and down either the same aisle and go back to the next aisle. Or if there's not enough debris, he could sweep one time down that aisle, then go to the next aisle. If the aisle is blocked, he's to go to the aisle in the very next aisle and then come back and get the aisle he missed. If you time him, you will see that he would be there prior to . . . Wait a minute. I'm not seeing the relevance right now. I don't think you're arguing that he actually did see the yogurt-like substance and just lied about not seeing it, are you? No. No, no, no. Okay. So he didn't see it and he should have seen it. And because he didn't see it and he should have seen it, that's the failure to exercise reasonable care about the safety of the aisles. Correct, Your Honor. Now, tell me why he should have seen it. He should have seen it because he should have gone to the next aisle, come down and swept the aisle. He never came back and swept that aisle. According to the policy that requires constant vigilance for hazards and things on the floor and so on. Correct. Okay. Okay. So basically they could have decided it wasn't there for long, but he was close enough so he should have gone back up the aisle and seen it. Correct. That's the case. Exactly. And you could have easily timed him on how long it took him to sweep the aisle to come back and sweep the aisle where the spill was at. I just want to make sure I understand how the jury could be reasonable. And you're saying what the jury could have thought was since he didn't go up the aisle because it was crowded and he did the next aisle, he could have come back to the aisle where the yogurt-like substance was. And if he had, he would have seen the yogurt-like substance. Right. Prior to my client slipping. Right. Yes. Do you want to reserve? I do want to reserve, Your Honor. If there's no other questions, I think I'll reserve the balance. Yeah. Thank you. Thank you. Please, the Court. My name is Robert Phillips. I represent Walmart Stores, Inc. Directly to that point, what the jury could have concluded to find liability on the part of Walmart. It's the time frame that makes that scenario that was just cited impossible. I don't understand why. We're under the Seventh Amendment, which is the background for all this. Walmart's entitled to a jury trial and Rios is entitled to a jury trial. And we indulge any possible way that the jury could have done what it did on the evidence. And I don't really see what's absurd about the theory that Rios has proposed. May I explain, Your Honor? The issue is that the jury has been given absolute deference in this case. The jury's finding the fact that the substance was on the floor indisputably for 2 minutes and 12 seconds. So what? There's no — where do you find that as a matter of law, a defendant cannot be liable if something is on the floor for 2 minutes and 12 seconds? That's essentially your case, and that's a factual question, not a legal question. As a matter of fact, the cases that we cite, Your Honor, in our brief in this jurisdiction, a store owner is only liable for a substance on the floor if it was on the floor for such a length of time that had the shop owner exercised ordinary care, they could have cured it. Sure. And that's what they didn't do here, given the policies and the video that would — that clearly show that it could have been done in time to avoid this accident. It could not have. And I want to make the record clear, there was misstatement is what the video shows. This is what the video shows, indisputably. Mr. Wagner walks down the aisle. He looks down the aisle. He's visually inspecting. He looks up as he walks down the aisle. He's not looking at the floor most of the time. The record indicates that the aisle was full so that he could not move his broom down. Keep in mind, Your Honors, that this is a unique slip-and-fall case because — Here's — tell me if I've got these facts wrong. The way I understood it was this guy's responsibility is to walk up and down the aisle, see if there are any problems, and take care of him if there are. So he's walking up and down the aisles doing just that. And it's inconvenient or impractical to walk up the aisle where the yogurt-like substance was because there are a bunch of people in the aisle. So he walks up the next aisle. And the plaintiff's theory is, well, after he walked up the next aisle, he should have walked up the yogurt aisle or walked back down on the yogurt aisle. We've all done that in a grocery. You want to get something that's on aisle 27, a bunch of people on aisle 27. So you go up aisle 28 to get what you need there and then come back to aisle 27 and walk down aisle 27. And as for the time — Two minutes and 23 seconds, Your Honor. Yeah. What's the big deal about that? I mean, if a kid drops a yogurt cone on the floor in front of the storekeeper, then the storekeeper can see immediately there's a yogurt cone on the floor and clean it up. Those aren't the facts, Your Honor. The facts are that when Mr. Wagner passed the aisle, which was perfectly appropriate — and by the way, as you're aware, policy does not exculpate or inculpate a defendant. Policy has nothing to do with fault. It's the reasonableness standard. Mr. Wagner — Fault reasonableness. Okay. So in two minutes and 23 seconds, two minutes and 23 seconds, between the time he passed the aisle and realized he couldn't get down it, he did the record states. Mr. Wagner testified that after he went down the aisle, he proceeded to a different aisle. Go ahead. Proof. And he was called to an urgent matter. That's in the record. He testified at page 121. What was the urgent matter? I don't remember. Well, he just — He doesn't say. He doesn't say. He says that when he went down to do the next aisle, he was handling another situation. Now, two minutes and 23 seconds, and the video is part of the record, this is not an aisle that's the — these aisles are not the size at the Walmart Supercenter of the length of this courtroom. This is a great jury argument, but you had the opportunity to go to a jury, and they disagreed with your assessment of reasonableness. And why isn't that entitled to deference? Because, according to Gallick, a specific finding of fact takes control over general conclusions. There's nothing in the record. By the way, it's pure speculation that the jury concluded the plaintiff could have submitted a special verdict of — Supposed to speculate on what the jury could have concluded. However, the jury, when you have a special wrong answer in a verdict form, the plaintiff could have submitted a — had plenty of time and should have submitted a question that stated what is the basis of finding of liability. Now, it's speculation while they found liability. I can tell you why they found liability, and — but it's not in the record, nor is the finding that somehow he should have gotten back more quickly. That's pure — Is this a special verdict or a general verdict? It's a special verdict, Your Honor. And — and — Even though the jury was asked the ultimate question about who was — whether each of the parties was negligent? Yes, Your Honor, because, first of all, this — the special interrogatory, which was invited and discussed throughout the length of the trial, was put in at the request of the Court. That was the — the Court recognized that the law is very clear, that even 10 minutes is too long to impose liability on a shopkeeper. This would be strict liability for a shopkeeper. On the shop and the shopkeeper, I have the same question Judge Graber asked earlier. I don't understand why, as a matter of law, the time creates a boundary. If it's a small shop and the shopkeeper sees a kid drop a yogurt cone, the shopkeeper doesn't need two minutes and some seconds to know about it. On the other hand, if it's a huge store and there's only one shopkeeper at the front of the store and he doesn't have people doing maintenance continually, he's not going to know for a while. On the other hand, if he does have people whose job it is to walk up and down the aisles and some — one of them was right there, then maybe he does. It seems like it's just for the jury to decide what's reasonable. That could be the case, but there's an underlying presumption that this Court is making that that's the reason the jury made the decision that they did, and that's — there's no evidence for that. It's not an assumption. Sotomayor, don't we have to, by our precedent, assume that a jury's verdict is valid unless there's a reason to think otherwise, and that we view the evidence in the light most favorable to the jury's verdict? Isn't that true? Yes, it is, Your Honor. And that's why the first question, that it was only on the floor for two minutes and 12 seconds, should be given specific deference over a general conclusion. But they're not inconsistent. You can be negligent in two minutes. You can be negligent in 20 seconds. You can be negligent in two hours. It's not a legal decision. It's a factual one. In the body of law applicable to the mundane world of slip-and-fall law, you can be negligent in two minutes and 12 seconds under two circumstances. Either the shop owner created the dangerous condition, or they had actual notice of it and didn't cure it in time, meaning they saw it, they should have guarded the spill, done something to protect the spill. There is no authority, and there is no case law that suggests that if a shop owner does not know — in this particular case, Your Honor, a child spilled a sippy cup, and as Mr. Wagner — after Mr. Wagner had walked by the aisle. Roberts, I should have known, incidentally. Pardon me? Knew or should have known. Correct. Correct. So we know for a fact under the evidence that — Oh, it's the should-have-known prong that's at issue here. How possibly could Mr. Wagner, as he goes down the next aisle and is cleaning another aisle, this is the — how in the world could a working man who's cleaning a shop in one aisle know that a sippy cup was spilled — By coming back to the aisle that he'd skipped. But it's not — correct. But it was not negligent for two — first of all, why would it be negligent? Why is there a presumption that there's negligence for not coming back in two minutes and 23 seconds? He can go to the next aisle. He can go to the next aisle. He's got multiple aisles that he's to go down. The presumption that we're imposing on a shopkeeper and a worker, that if you don't come back immediately to the next aisle within two minutes and 23 seconds, I will say hypothetically, Your Honors, that normally the lawsuits arise because they went through the aisles too fast. So normally, my client is sued because they don't spend only two minutes in the aisle. Well, because they ignore — right. But, you know, ignoring a problem can create liability just like anything else. Absolutely. And they didn't know the problem. Was there evidence that he couldn't come back down the aisle, but he'd skipped other than some unnamed matter that came up? No. He could. He could. I'm thinking you walk up, you skip aisle 27 — I'm making up the number, of course. Sure. You skip aisle 27 because it's full of people. You know you missed aisle 27. So you go up aisle 28 and check it out, and you're thinking, I'll come right back to 27. And then you don't. Either you forget about it, or your girlfriend calls, or somebody calls out, spill on aisle 42, and you have to go over there. Any number of things. But I don't think there was evidence of what those things were. Precisely. So is there any evidence that he couldn't have just come back to aisle 27? There's no evidence that he — the evidence that he couldn't have come back is it was two minutes and 23 seconds, which is normally the time — But we have evidence that that's too short a time to come back to. Considering that normally that's the time that you get sued for taking too little time to clean the aisle. That's just not the law. But the point is, Your Honor — There's no two-minute law. The point is, the burden is on the plaintiff. There are cases that say two minutes wasn't long enough, but that's not a two-minute law. Now, listen to the question. Was there evidence that the length of the aisles and the duration of the period the yogurt-like substance was on the floor were such that it would have been impossible for him to just come back to the aisle he'd skipped? Yes. Mr. Wagner testified that he was taking care of another matter in another aisle at the time — after he'd passed it. He was on the record. There was no disputing that fact. He stated under oath without any — any — there was no dispute that as he passed it — Jury didn't have to believe a thing he said, though. He did not have to believe it. But — but you asked, Your Honor, was there any evidence. We have evidence of that. And there is no evidence that he could — That's not evidence of impossibility. That's evidence of a conflict of two possible tasks. Well, it is impossible to conclude that it's unreasonable for someone not to come back in two minutes and 23 seconds with — with having passed that aisle and decided to come back. There was no — there was no policy, no rule that he couldn't do the next four aisles or the next five aisles. The presumption that he has to come back, which is really, according to the record, a nonsensical protocol if you're going up and down the aisles, there's this overriding presumption that somehow he's not to go to the next aisle. There's no order of the inspection. He — he can proceed to the next aisle. The point of the protocol was just make sure that you check every aisle. And he was doing that. Counsel, your time has expired, but I have one matter I'd like to — you to answer because I don't think it was a complete answer to Judge Graber's question as to whether this was a special or a general verdict. Is it your — is it your position that it's question number one that renders this a special verdict as opposed to a general verdict? Well, I believe it's — it's — Because otherwise, it looks like a general verdict form to me. It does. However, according to Pierce, the cases we cite, if the — the trial court declared it to be a special verdict and it was the intent of the trial court to make it a special verdict and interpret it, as the Court said, if the court declares it to be a special verdict, and, of course, that was the intent of the — his esteemed honor, Judge Dawson, he knew from the very beginning that the only question for the jury was, since it's all captured on tape, was the spill longer than the 2 minutes and 12 seconds. I thought the law was that when a jury returns only factual statements and not a legal finding, that's what makes it a special verdict. Well, it — When — when there is an ultimate legal conclusion, it — it is considered a general verdict with a special interrogatory. Isn't that true under Zhang? Well, it — it is — it is true. However, this has to be a special verdict, and it has to be reconciled. Why can't it be a general verdict with a special interrogatory? Because the jury is asked, was Wal-Mart negligent? Answer, yes. Was — was its negligence a legal cause of damage? Yes. It's deciding legal questions, and under our precedent, that makes it a general verdict, does it not? But if you have a special interrogatory that's a factual finding that cannot be found as a matter of law, they have to be reconciled by the trial court. And the trial court having no understanding that the — the constructive notice is impossible in this case cannot — Well, that's — that's where I started and where I'm finishing. Your — your ultimate argument is the questions 1 and 2 are irreconcilable. And if that is wrong, if they are reconcilable, you lose, correct? If they're reconcilable — Is that — it's a yes or no question. It is. That is correct. And the court — as the court found, they are completely irreconcilable. Okay. Thank you, counsel. Okay. Thank you very much, jurors. Thank you, Your Honors. A couple issues I think I'd like to address. One is the testimony of Mr. Wagner that he was rushing off. Again, I think Your Honors addressed that. They could disregard everything that Mr. Wagner said. He also said he always looked at the floors and he looked down the aisle and the video clearly belied that fact, plus the fact that he was a felon. They could disregard his testimony. And again, that comes down to a factual issue. And if we're getting into the factual issues and the substance of the case, then we have to look at this as, is this a special verdict in allowing us to go back and do a 50-B motion when, in fact, this is a general verdict, I think. And there's a case out of the Sixth Circuit, Portage 2, which we cited in our briefs, which is nearly identical. You can call it — Remind me of the purpose of that — Sure. — the distinction the rules make between special and general verdict in obligatory motions. Right. In Portage? Remind me of the purpose of the distinction that the rules make between general and special verdicts for purposes of what motions have to be made to preserve error. Sure. If it's a general verdict, you must bring a 50-A before you can bring a 50-B. Why? The rule — well, because it's a strict rule. In other words, under 50-A — Oh, why is there such a rule? Oh, because — I would suspect because at that point in time, you're arguing the sufficiency of the facts. I had thought that the reason for the rule was that it might be curable. Oh, throughout — The judge could always — oh, the most common one you see in federal court is probably a new prosecutor forgetting to prove that the bank that was robbed was a federally insured bank. And a judge may or may not indulge him in reopening the evidence to put on evidence it was a federally insured bank. Right. Or jurisdictionally, like, for instance, if — Whether the gun crossed state lines. Sure. And then if we look at this also, Your Honor, I think address this issue correctly as well, and that is on the two minutes and 12 seconds or whatever the case may be. It's a case-by-case basis. It's not a matter of law. And the trial court — remember, the trial court entered the judgment that there was never an issue as to consistency of the questions between each other at any given time. In fact, that issue didn't even arise into a reply brief. It wasn't argued in their original motion. They argued a 50B, sufficiency of the evidence. We replied to that. Look, let me — Or responded to that. Let me get back to my question. As far as I can tell, our jurisprudence is incoherent and contradictory on whether particular verdicts are special or general. And that's why I asked, what is the purpose of the rule? Because it helps sort out which way to count it. What could a motion accomplish? Well, in this particular case, if it's sufficiency of the evidence, it allows them to argue the facts of the case again and let the judge make the decision on the facts of the case. Well, that seems to be the distinction. Because if the jury finds only facts, then the judge is required to actually reach the legal conclusion that permits the entry of a judgment. But if the jury has answered the legal questions about negligence, causation, and damages, then the judge has a much smaller role to play. Correct. And in this particular case, the judge didn't do anything. In fact, didn't even bring up the fact that these answers were inconsistent. Nobody did. Right. But I think the question on whether it's special or general may come down to, does the inclusion of a question, a special interrogatory as opposed to a verdict, does the inclusion of a special factual interrogatory transform a general verdict into a special verdict? No. 49B, Your Honor, allows for special interrogatories and still be a general verdict. One thing I can't figure out here, usually asking the jury, was the defendant negligent, is the end of the story on whether they were negligent. But this verdict form also asks the jury, was there causation? Well, negligence has four elements, as we all remember from bar review. And causation, proximate cause, is one of the four. So I can't figure out why there's that second question when the first question seems to include it. Was there something funny about the instructions with respect to that? No, Your Honor. If you look at the instructions, they're very clear. And in fact, if you look at jury instruction number 16, law does not say how a reasonable person would act under the circumstances. That is for you to decide, and then jury. And then 19, constructive notice is used here. Means the substance of the affordment was there for a sufficient time that the defendant, through reasonable diligence, would have been aware of its existence. Was there a causation instruction? There was. If there was, do you, I'm trying to figure out whether it's a special or general verdict. And usually in a general verdict, you would just ask if Walmart was negligent. You wouldn't ask about causation separately. That's why I'm confused. Well, the judge determined that that was the questions. I don't disagree with you, but we didn't have a problem with it. The lawyers didn't write up the form? No, the judge did. Oh. Thank you, counsel. The case to start will be submitted for decision, and we'll take a 10 minute recess.
judges: Kleinfeld, Thomas, Graber